LAUREL I. HANDLEY (NV Bar # 009576)
JORY C. GARABEDIAN (NV Bar # 10352)
**ALDRIDGE PITE, LLP**
520 South 4th St., Suite 360
Las Vegas, Nevada 89101
Telephone: (858) 750-7600
Facsimile: (702) 685-6342
E-Mail: lhandley@aldridgepite.com

Attorneys for Defendant
WELLS FARGO BANK, NATIONAL ASSOCIATION

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT LAFAYETTE,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION; NATIONAL DEFAULT SERVICING CORPORATION,<br><br>Defendants. | Case No. 2:16-CV-00023-RFB-NJK<br><br>**MOTION TO DISMISS** |

Defendant WELLS FARGO BANK, N.A. ("Wells Fargo"), by and through its attorneys of record, the law firm Aldridge Pite, LLP, hereby moves this Honorable Court to dismiss the instant matter pursuant to Fed. R. Civ. Proc. 12(b)(6).

## I.

## <u>INTRODUCTION</u>

Plaintiff Robert Lafayette ("Plaintiff") has failed to state viable Fair Debt Collection Practices Act ("FDCPA") claims against Wells Fargo. First and foremost, this case involves a mortgage debt that was discharged under Chapter 7 of the Bankruptcy Code. Plaintiff has already unsuccessfully pursued both discharge and FDCPA violations against Wells Fargo in bankruptcy court. The bankruptcy court previously denied Plaintiff's request for sanctions and

damages.  Plaintiff cannot now breathe new life into the FDCPA claims through this Court by ignoring the Bankruptcy Code.  Rather, Plaintiff's remedies as to the discharged debt rested with the bankruptcy court, and Plaintiff cannot file a separate simultaneous claim under the FDCPA to circumvent the Bankruptcy Code.

Second, even ignoring bankruptcy considerations, Plaintiff's FDCPA claims still substantively fail.  Wells Fargo is not a debt collector as it acquired the loan or debt in question through merger with the originator rather than through a sale or assignment of the debt.  Even so, the acquisition of the loan or debt was before Plaintiff defaulted.

Also, Plaintiff's FDCPA claims reference various foreclosure activity by Wells Fargo and its foreclosure trustee.  However, the district courts within the Ninth Circuit have uniformly recognized that foreclosure itself is not a debt collecting activity covered by the FDCPA.

Plaintiff's FDCPA claims also highlight four letters that Wells Fargo sent to him.  Yet even if the Court looks at the substance of the letters, the Court must undoubtedly conclude that the letters do not attempt to collect any debt from Plaintiff as they do not contain a demand for payment.  Instead two of the letters simply contain account status and information, and the two other letters are addressed to the occupant of the property in question to offer monetary relocation assistance.  For these reasons, and the reasons described more fully below, the Court must dismiss the instant action with prejudice.

**II.**

**STATEMENT OF FACTS**

On or about November 17, 2004, Plaintiff entered into a mortgage loan agreement with World Savings Bank, FSB for the principal sum of $357,000.00.  The loan was secured by a Deed of Trust ("Deed of Trust") recorded in the Office of the Clark County Recorder on November 23, 2004 as document/instrument 20041123-0003700.  (Attached hereto as **Exhibit 1** is a true and correct copy of the recorded Deed of Trust). The Deed of Trust encumbered that real property commonly known as 9578 Adobe Arch Court, Las Vegas, Nevada 89148 (hereinafter the "Subject Property").

On or about December 31, 2007, World Savings Bank FSB amended its charter and bylaws to change its name to Wachovia Mortgage, FSB ("Wachovia").  (Attached hereto as **Exhibit 2** is a true and correct of the FDIC: BankFind Search Details (History) for World Savings Bank, FSB ).  Thereafter on November 1, 2009, Wachovia changed its name to Wells Fargo Bank Southwest, NA, which, on the same day, merged into and subsequently operated as Wells Fargo Bank, NA.  (Id.)

On or about January 3, 2013, a Notice of Default was recorded against the Subject Property stating that Plaintiff's loan had become past due on October 15, 2011.  (Attached hereto as **Exhibit 3** is a true and correct copy of the of the recorded Notice of Default and Election to Sell Under Deed of Trust).  A Notice of Trustee's Sale was subsequently recorded on December 27, 2013 setting the sale date of the Subject Property for January 22, 2014.  (Attached hereto as **Exhibit 4** is a true and correct copy of the recorded Notice of Trustee's Sale).

On January 15, 2014, and a week before the scheduled foreclosure sale date, Plaintiff filed a voluntary petition for Chapter 13 bankruptcy in the U.S. Bankruptcy Court, District of Nevada designated as Case No. 14-10235-btb (hereinafter the "Bankruptcy Case"), which was later converted into a Chapter 7 on March 18, 2014.  On June 16, 2014, Plaintiff filed a Chapter 7 Individual Debtor's Statement of Intention as to the Subject Property, which listed Wells Fargo as creditor of debt secured by property.  (See Bankruptcy Case, Dkt. 49).  Wells Fargo moved the bankruptcy court for relief from the automatic stay on July 21, 2014 (see Bankruptcy Case, Dkt. 55), which was granted by the bankruptcy judge on September 4, 2014 (see Bankruptcy Case, Dkt. 62).  Plaintiff received a Chapter 7 discharge on January 6, 2015 and the Bankruptcy Case was closed on January 16, 2015.  (See Bankruptcy Case, Dkts. 67 & 69).

On July 31, 2015, a new Notice of Trustee's Sale was recorded on the Subject Property setting a new sale date of August 26, 2015.  (Attached hereto as **Exhibit 5** is a true and correct copy of the recorded Notice of Trustee's Sale).  Plaintiff thereafter filed a Motion to Reopen the Bankruptcy Case and Motion to Sanction Wells Fargo on August 19, 2015.  (See Bankruptcy Case, Dkt. 70, hereinafter the "Motion to Reopen/Sanction).  The Motion to Reopen/Sanction

sought discharge violations against Wells Fargo because Plaintiff contended Wells Fargo was foreclosing on a discharged debt that had been split from the Deed of Trust.  (See Bankruptcy Case, Dkt. 70, ¶¶ 5-7).  Under the same vein, the Motion to Reopen/Sanction further contended that Wells Fargo violated the FDCPA 15 U.S.C. § 1692.  (See Bankruptcy Case, Dkt. 70, ¶ 8). Plaintiff ultimately sought sanctions against Wells Fargo and a release of the Deed of Trust to afford him free and clear title to the Subject Property.  (See Bankruptcy Case, Dkt. 70, pg. 4-5). As a result of the Motion to Reopen/Sanction, Plaintiff also recorded a Notice of Lis Pendens and Notice of Stay and Adverse Claim (hereinafter the "First Lis Pendens") on September 1, 2015.  (Attached hereto as **Exhibit 6** is a true and correct copy of the recorded First Lis Pendens).

On August 20, 2015, and only day after the filing of the Motion to Reopen/Sanction, Plaintiff also filed a Verified Application for Temporary Restraining Order and Motion for Preliminary Injunction  and Ex Parte Order for an Order Shortening Time (hereinafter "Application for TRO") in the Eighth Judicial District Court of Nevada.  (Attached hereto as **Exhibit 7** is a true and correct copy of the Application for TRO).  The Application for TRO contended once again that Wells Fargo was an unsecured creditor and that the loan secured by the Deed of Trust had been discharged.  (See Exhibit 7, pgs. 1-4).  However, after a hearing on the Application for TRO on September 1, 2015, the court denied/dissolved the TRO because: (1) Plaintiff had failed to serve Wells Fargo; (2) Plaintiff failed to file a Complaint; and (3) Plaintiff failed to assert sufficient evidence and legal grounds to warrant any further injunctive relief against Wells Fargo from foreclosing on the Subject Property.  (Attached hereto as **Exhibit 8** is a true and correct copy of the Notice of Entry of Order Dissolving Temporary Restraining Order and Denying Motion for Preliminary Injunction).

With no injunction in place, and following two postponements of the August 26th foreclosure sale, Wells Fargo proceeded with foreclosure on the Subject Property on September 14, 2015.  The Trustee's Deed Upon Sale was recorded on September 23, 2015 wherein the Subject Property was conveyed to Wells Fargo.  (Attached hereto as **Exhibit 9** is a true and

1    correct copy of the recorded Trustee's Deed Upon Sale).

2        On October 1, 2015, the bankruptcy court denied the Motion to Reopen/Sanction.  (See

3    Bankruptcy Case, Dkt. 77).  Following a motion from Wells Fargo, the bankruptcy court also

4    expunged the First Lis Pendens on January 27, 2016.  (See Bankruptcy Case, Dkt. 96).

5        Plaintiff filed the instant action on January 6, 2016.  (See Dkt. 1).  Plaintiff alleges that

6    Wells Fargo and its foreclosure trustee, National Default Servicing Corporation ("NDSC"),

7    violated the FDCPA and seeks monetary damages of $472,949.76.  (See Id.)  Plaintiff also

8    subsequently recorded two additional lis pendens as a result of the instant action - one on January

9    7, 2016 (hereinafter the "Second Lis Pendens") - and the other on February 2, 2016 (hereinafter

10   the "Third Lis Pendens").  (Attached hereto as **Exhibit 10** is a true and correct copy of the

11   recorded Second Lis Pendens; and attached hereto as **Exhibit 11** is a true and correct copy of the

12   recorded Third Lis Pendens).  However, at this time, it does not appear that Plaintiff has bothered

13   to serve either Wells Fargo or NDSC as there has been no Affidavit of Service or Return of

14   Summons filed.

15                                    **III.**

16              **STANDARD OF REVIEW & REQUEST FOR JUDICIAL NOTICE**

17       A properly pleaded complaint must provide a "short and plain statement of the claim

18   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*,

19   550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands

20   more than "labels and conclusions" and a "formulaic recitation of the elements of a cause of

21   action" simply will not do.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Factual allegations

22   must be enough to rise above the speculative level."  *Twombly*, 550 U.S. at 555.  To survive a

23   motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is

24   plausible on its face."  *Iqbal*, 556 U.S. at 696.  Although a court must assume as true factual

25   allegations, the court is not bound to accept as true any legal conclusions.  *Iqbal*, 556 U.S. at 678.

26       Further, "courts must consider the complaint in its entirety, as well as other sources

27   courts ordinarily examine when ruling on  Rule 12(b)(6) motions to dismiss, in particular,

documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007).  Courts have the right to examine their own records and take judicial notice of prior proceedings filed by one of the parties.  *See De Galard v. Safe Deposit & Trust Co.*, 223 U.S. 24, 33 (1914).  Courts may also "properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

Wells Fargo respectfully requests that this Court take judicial notice of the documents/exhibits attached hereto and the referenced court docket entries herein.  Such documents/exhibits and court docket entries are publicly available documents from government sources such as the Clark County Recorder's Office, the U.S. Bankruptcy Court District of Nevada, the Eighth Judicial District Court of Nevada, and the Federal Deposit Insurance Corporation.  Thus, they are capable of accurate and ready determination from a source whose accuracy cannot be reasonably questioned.  *See* Fed. R. Evid. 201.  Based upon the judicially noticeable evidence, and even the documents attached to Plaintiff's Verified Claim (Dkt. 1), Plaintiff has not and cannot state a claim for relief under the FDCPA, and thus this Court must dismiss this matter with prejudice.

## IV.

## ARGUMENT

### A. Plaintiff's FDCPA Claims must be Dismissed as Plaintiff Cannot Pursue Discharge Violations in Conjunction with FDCPA Claims.

Plaintiff cannot use this Court to resurrect his failed attempt in bankruptcy court to impose sanctions or a damage award against Wells Fargo for discharge or FDCPA violations.  In *Walls v. Wells Fargo Bank, N.A.,* the Ninth Circuit addressed the issue of whether a debtor may pursue simultaneous claims for discharge violations and for FDCPA violations.  276 F.3d 502, 504 (9th Cir. 2002).  The Ninth Circuit unequivocally answered the question in the negative. (*Id.*)

In *Walls*, a Chapter 7 bankruptcy debtor brought a class action against Walls Fargo in the U.S. District Court - Eastern District of California for violations of the discharge injunction. (*Id.*)   The debtor alleged that Wells Fargo violated the discharge injunction under 11 U.S.C. § 524 and the FDCPA by attempting to collect her discharged debt.  (*Id.*)    Specifically, the debtor alleged that Wells Fargo continued to solicit and collect monthly payments from her after the discharge even though debtor had used the "ride-through" provision that allows debtors who are current on their loan payments on secured property to continue to make such payments.  (*Id.* at 505).  Upon motion by Wells Fargo, the district court referred the debtor's discharge violation claims to bankruptcy court, and held that: (1) 11 U.S.C. § 524 does not create a separate private right of action and (2) the Bankruptcy Code precludes simultaneous claims under the FDCPA. (*Id.* at 505 & 510).

The Ninth Circuit ultimately affirmed the district court's ruling on both accounts.  (*Id.* at 511).  The Ninth Circuit reasoned that:

> The Bankruptcy Code provides its own remedy for violating § 524, civil contempt under § 105. *To permit a simultaneous claim under the FDCPA would allow through the back door what Walls cannot accomplish through the front door—a private right of action.* This would circumvent the remedial scheme of the [Bankruptcy] Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt.). . . Nothing in either Act persuades us that Congress intended to allow debtors to bypass the [Bankruptcy] Code's remedial scheme when it enacted the FDCPA. *While the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code.*

*Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002) (emphasis added).

In this case, and much like *Wall*, Plaintiff pursued both discharge injunction violation and FDCPA claims against Wells Fargo in the Bankruptcy Case.  (See Bankruptcy Case, Dkt. 70). The bankruptcy court ultimately denied Plaintiff's request for relief.  (See Bankruptcy Case, Dkt. 77).

Plaintiff now attempts to breathe new life into his FDCPA claims by omitting any reference to his bankruptcy discharge, and instead referencing and attaching specific letters in his

Verified Claim in the instant action.  (See Dkt. 1).  However, the underlying issue is still the same as in *Walls*.  Plaintiff is simply trying to apply the FDCPA to a secured debt that was discharged through the Bankruptcy Code.    Wells Fargo had the right to exercise its remedies against the Subject Property after the discharge.  Plaintiff cannot invoke the protections of the Bankruptcy Code by seeking to discharge his debt owed to Wells Fargo, but then turnaround and feign surprise as to the existence of the debt and use the FDCPA to attack Wells Fargo's foreclosure.  Plaintiff's remedies as to the collection of his discharged debt lie within the Bankruptcy Code and not through a separate or simultaneous action under the FDCPA. Accordingly, Plaintiff's FDCPA claims must be dismissed with prejudice.

### B. EVEN IF THE COURT EXAMINES THE FDCPA CLAIMS, THEY STILL FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even if the Court examines Plaintiff's underlying FDCPA claims, they all lack merit. The FDCPA is a consumer protection statute that "prohibits debt collector[s] from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).  In this case, Wells Fargo does not qualify as a debt collector under the FDCPA, and further did not engage in any debt collecting activity.

### 1.  Wells Fargo is Not a Debt Collector.

"The FDCPA defines 'debt collector' to include: (1) 'any person who uses any instrumentality of commerce or the mails in any business the principal purpose of which is the collection of any debts,' and (2) any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'"  *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013) quoting 15 U.S.C. § 1692a(6).  In interpreting this definition, courts have consistently held that the FDCPA does not apply to mortgage servicers, or mortgage assignees, if the mortgage debt was not in default at the time it was obtained. *See e.g. Klohs v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 1253, 1258 (D. Haw. 2012); *Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1113 (N.D. Cal., 2014) ( a mortgage company collecting its own debt is not a debt collector); *Bailey v. Sec. Nat'l Servicing*

1  *Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028,

2  1031 (9th Cir. 2009) ("a 'creditor' is not a 'debt collector' under the FDCPA").

3          Here, Wells Fargo actually obtained the debt secured by the Deed of Trust through

4  merger and name change before Plaintiff's debt went into default.  Although World Savings

5  Bank FSB was the name of the originating lender, it later changed its name to Wachovia.

6  Wachovia then changed its name to Wells Fargo Bank Southwest, NA, which immediately

7  merged into and operated as Wells Fargo in November 2009.  (See **Exhibit 2**).  This all occurred

8  prior to the recording of the Notice of Default, and even prior to default date of October 2011 as

9  stated in the Notice of Default.  (See **Exhibit 3**).

10         Even so, at least one circuit has recognized that debt in default acquired through a merger

11  with a previous creditor, rather than through a specific assignment, does not make the acquiring

12  party a debt collector under the FDCPA.  *Brown v. Morris*, 243 Fed. App'x 31, 34 (5th Cir.

13  2007); *Dues v. Capital One, NA*, 2011 WL 3799762, *4 (E.D. Mich. 2011); *Esquivel v. Bank of

14  America*, N.A., 2013 WL 682925, *2 (E.D. Cal. 2013); *see also In re Mullin*, 2014 WL 5840364,

15  *10 (BAP 9th Cir. 2014) ("Because [Wells Fargo Bank] owns the loan through the above

16  described name changes and mergers, it is a creditor/originator of debtors' debt and is not a 'debt

17  collector.'").  Thus, Wells Fargo's acquisition of the debt secured by the Deed of Trust through

18  merger would still not make it a debt collector under the FDCPA even if it had been in default.

19  Plaintiff, therefore, cannot prevail on his FDCPA claims.

20         **2.  Foreclosure is Not a Debt Collecting Activity.**

21         To the extent Plaintiff claims that Wells Fargo engaged in debt collecting activity by

22  foreclosing on the Subject Property, this theory fails.  Foreclosure simply does not constitute

23  debt collection under the FDCPA.  *Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 944

24  (D. Nev. 2011).  Although the Ninth Circuit has not yet ruled on the issue, the district courts

25  within the Circuit are in agreement with this position.  *See Id.*; *see also In re Nordeen*, 495 B.R.

26  468, 489 (BAP 9th Cir. 2013) (foreclosing on a deed of trust is distinct from collecting debt and

27  is not an attempt to collect funds from the debtor); *Wensley v. First Nat. Bank of Nevada,* 874 F.

1    Supp. 2d 957, 963 (D. Nev. 2012); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110

2    (N.D. Cal. 2013); *Deissner v. Mort. Elect. Registrations Sys.*, 618 F. Supp. 2d 1184, 1189 (D.

3    Ariz. 2009) aff'd, 2010 WL 2464899 (9th Cir. Jun. 17, 2010) (concluding that non judicial

4    foreclosure proceedings do not fall within the FDCPA's scope; *Hulse v. Ocwen Federal Bank,*

5    *FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a deed of trust is distinct form

6    the collection of the obligation to pay money.  The FDCPA is intended to curtail objectionable

7    acts occurring in the process of collecting funds from a debtor.").

8       Consistent with Plaintiff's bankruptcy discharge and the stay relief afforded by the

9    bankruptcy court, any action by Wells Fargo in this case was to exercise its rights against the

10   Subject Property and not against Plaintiff personally.  The discharge order even specifically

11   acknowledges that liens, mortgages and other security interests may be enforced against

12   Plaintiff's property after the bankruptcy.  (See Bankruptcy Case, Dkt. 67 pg. 2).

13       It is thus clear the Bankruptcy Code recognizes the distinction between enforcing debts

14   against a person and exercising remedies against secured property, and the FDCPA should be no

15   different. Indeed, non-judicial foreclosures in Nevada have their own procedural mechanisms

16   under NRS 107 to ensure accurate notice, fairness and opportunity to cure before real property is

17   sold.  This Court, consistent with its own precedent and the precedent of the other district courts

18   in this Circuit, should not impose FDCPA requirements into state governed proceedings to

19   recover real property.

20       **3.  None of the Letters Sent by Wells Fargo are Attempts to Collect a Debt.**

21       Even if one examines the specific letters that Plaintiff claims are FDCPA violations, they

22   do not arise to attempts to collect a debt.  Letters that do not demand payment, but simply inform

23   borrowers of the status of their account are not considered debt collection.  *Casault v. Federal*

24   *Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1127 (C.D. Cal. 2012).  The four letters from Wells

25   Fargo that Plaintiff complains about all lack any demand for payment and instead either provide

26   account.

27       The first letter dated "8/27/15" simply informs Plaintiff of the foreclosure situation and

reminds him that the foreclosure sale has been scheduled.  (See Dkt. 1, pg. 21).  Wells Fargo also informs Plaintiff that Wells Fargo had not heard from Plaintiff or received documentation to determine Plaintiff's eligibility for mortgage assistance.  (See Id.)  The letter goes on to inform Plaintiff that it is now too late to review for mortgage assistance options.  (See Id.)  However, nowhere in this first letter is there any demand for payment.

The second letter dated "8/28/15" again informs Plaintiff of the foreclosure sale date and specifically states that:

> As a result of your bankruptcy case, this letter is not an attempt to collect a debt from you or in any way violate any provision of the United States Bankruptcy Code.  This letter has been sent to you for informational purposes only.  This is not a bill or a request for payment, or a statement that you are personally obligated in any way to make a payment.

(See Dkt. 1, pg. 23).  The second letter even goes on to say that workout options with Wells Fargo are "strictly voluntary" and that Plaintiff is not obligated to pursue or discuss such options. (See Id.)  This second letter is merely informative by its express language and simply does not make a demand for any payment.

The third letter dated "October 13, 2015" contains information directed to the occupant of the Subject Property that ownership of the Subject property has changed.  (See Dkt. 1, pg. 26). This is plainly true and accurate as the Trustee's Deed Upon Sale evidencing the ownership change had already been recorded on September 23, 2015.  (See **Exhibit 9**).  Noticeably the third letter is not even addressed to Plaintiff and does not demand any payment or even provide Plaintiff's account information.  Instead the third letter offers relocation assistance directly to the occupant to peacefully vacate the Subject Property in light of the ownership change.  (See Dkt. 1, pg. 26).

The fourth and final letter, also dated "October 13, 2015," is also directed to the occupant of the Subject Property and again offers relocation assistance, this time with specific monetary amounts if the occupant vacates by certain dates.  (See Dkt. 1, pg. 27).  This fourth letter could not be farther from debt collecting activity as it plainly offers to pay money, instead of

1  demanding that money be paid.  Just like the third letter, no sensitive account information of

2  Plaintiff is communicated to the occupant.

3       Accordingly, none of the letters are debt collection activities that would violate the

4  FDCPA, and thus Plaintiff cannot prevail on his FDCPA claims.

5  **V.**

6  **CONCLUSION**

7       Based upon the foregoing, Wells Fargo respectfully requests that this Court dismiss the

8  instant action with prejudice.

9                            ALDRIDGE PITE, LLP

10

11  Dated:  April 26, 2016               By:  */s/ Jory C. Garabedian*

12                                  LAUREL I. HANDLEY
JORY C. GARABEDIAN

13                                  *Attorneys for Defendant*
*WELLS FARGO BANK, NATIONAL*

14                                  *ASSOCIATION*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "1"

Recording Requested By:
**Fidelity National Title**
500 N. Rainbow Blvd Suite #100
Las Vegas, NV 89107

**WHEN RECORDED MAIL TO:**

WORLD SAVINGS
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548
LOAN NUMBER:  0026424564

NOTE AMOUNT:  $357,000.00

ASSESSOR'S PARCEL #:
143·30·612·002



20041123-0003700

Fee: $31.00
N/C Fee: $0.00

11/23/2004          14:37:29
T20040137216

Requestor:
FIDELITY NATIONAL TITLE

Frances Deane                          ADF
Clark County Recorder      Pgs: 18

FOR RECORDER'S USE ONLY

## DEED OF TRUST  232028 DH

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH
CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE,
FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE
(INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S
OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL AMOUNT SECURED BY THIS MORTGAGE
IS  $446,250.00  WHICH IS  125% OF THE ORIGINAL PRINCIPAL NOTE
AMOUNT.

I.   DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
     (A) **Security Instrument.** This Deed of Trust, which is dated **NOVEMBER 17,**
**2004,**  " will be called the "Security Instrument."

     (B) **Borrower.**  ROBERT LAFAYETTE, A MARRIED MAN

sometimes will be called "Borrower" and sometimes simply "I" or "me."

     (C) **Lender.**  WORLD SAVINGS BANK, FSB, * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * **ITS SUCCESSORS AND/OR**
ASSIGNEES, will be called "Lender." Lender is  A FEDERAL SAVINGS BANK * * * *
which is organized and exists under the laws of the United States. Lender's address is
1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612.

SD020A (06.01.03/1-03) A20A          DEED OF TRUST-ADJUSTABLE          NV
DEFERRED INTEREST                    Page 1

* 0 0 3 *

LENDER'S USE ONLY

(D)   **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $357,000.00 * *  , ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in monthly payments and to pay the debt in full by DECEMBER 15, 2034.

(E)   **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)   **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)   **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H)   **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION * * * * * * * * * * * * * * * * * * * * * * * * * * * * * is the "Trustee."

II.   **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**
I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i) pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii) pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii) keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   **DESCRIPTION OF THE PROPERTY**
I give Trustee rights in the Property described below:

(i) The property which is located at 9578 ADOBE ARCH COURT, LAS VEGAS, NV  89148 . * * * * * * * * * * * * * * * * * * *  The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

IV.   **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

1.   **BORROWER'S PROMISE TO PAY**
I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.   **PAYMENTS FOR TAXES AND INSURANCE**
   (A)   **Borrower's Obligations**
      I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD020C (05.01.03/1-03) A20D                    DEED OF TRUST-ADJUSTABLE                    NV

**(B) Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

## 3.   APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;
Second, to pay any advances due to Lender under this Security Instrument;
Third, to pay the amounts due to Lender under Paragraph 2 above;
Fourth, to pay interest due under the Secured Notes;
Fifth, to pay deferred interest due under the Secured Notes;
Sixth, to pay principal due under the Secured Notes;
Last, to pay late charges due under the Secured Notes.

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

SD020E (05.01.03/1-03) A20F                 DEED OF TRUST-ADJUSTABLE                              NV
                                                                            Page 5

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6.   BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**
I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**
If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5 above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.    LENDER'S RIGHT TO INSPECT THE PROPERTY**
Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**
I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
**(A)    Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 9578 ADOBE ARCH COURT, LAS VEGAS, NV 89148 . * * * * * * * * * * * * * * * * * * * *
A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I. (C) above entitled, "Definitions of Words Used in this Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law" and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located." In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly

from the tenants; (B), enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An **assignment** is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

19.   CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

20.   LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

21.   WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.   CAPTIONS**
The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.   MODIFICATION**
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**
If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**   If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

**(B)**   The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By—laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**   If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)   I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.   FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

## 26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv) an assumption fee, in an amount of 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower, is paid to Lender; and

(v) the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 27.   SUBSTITUTE TRUSTEE

Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

## 28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.   RECONVEYANCE**

Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.   STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

**31.   ( X ) QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.   ( X ) OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
ROBERT LAFAYETTE

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Mailing Address:   ROBERT LAFAYETTE
                   9578 ADOBE ARCH COURT
                   LAS VEGAS, NV  89148

ATTACH INDIVIDUAL   NOTARY ACKNOWLEDGEMENT

SD02001 (05.01.03/1-03) A20P          DEED OF TRUST-ADJUSTABLE                  NV
                                            PAGE 15

**LOAN NUMBER:** ███████

**BORROWER(S)' SPOUSE(S):** The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property. By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

**BORROWER(S)' SPOUSE(S):**

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD875A1 (04.15.04/1-04) L75A                                    NV

STATE OF _Nevada_

COUNTY OF _Clark_

THIS INSTRUMENT WAS ACKNOWLEDGED BEFORE ME, THE

UNDERSIGNED, THIS _17_ DAY OF _November_ ,200__ BY

_Robert Lafayette_

NOTARY SIGNATURE _Diana Holquin_

MY COMMISSION EXPIRES _9-1-2007_



NOTARY PUBLIC
STATE OF NEVADA
County of Clark
D. HOLQUIN
Appt. No. 95-0242-1
My Appt. Expires  Sept. 1, 2007

# EXHIBIT "ONE"

Lot 2 in Block 1 of Grandbrooke V, as shown by map thereof on file in Book 100 of Plats, Page 78 in the Office of the County Recorder of Clark County, Nevada.

Assessor's Parcel No: 163-30-612-002

# Exhibit "2"

World Savings Bank, FSB - Inactive (FDIC # 27076)  Inactive as of November 1, 2009
World Savings Bank, FSB was merged or acquired without government assistance
**Data as of: April 13, 2016**

World Savings Bank, FSB is no longer doing business under that name because it has been **merged or acquired without government assistance**. See the successor institution, Wells Fargo Bank, National Association (FDIC #: 3511)

| | | | | | |
|---|---|---|---|---|---|
| **FDIC Certificate#:** | 27076 | **Established:** | October 8, 1987 | **Contact the FDIC about:** World Savings Bank, FSB or Wells Fargo Bank, National Association | |
| **Headquarters:** | 6825 Aliante Parkway North Las Vegas, NV 89084 Clark County | **Insured:** | October 8, 1987 | | |
| | | **Bank Charter Class:** | National Bank | | |

Locations    History    Identifications    Financials

**Showing 1 to 18 of 18 entries (filtered from 26 total entries)**

| Date | Event |
|---|---|
| 10/6/1987 | Institution established: Original name:Watchung Hills Bank for Savings (27076) |
| 1/21/1995 | Changed name to **World Savings Bank, F.S.B.** (27076) |
| 1/21/1995 | Changed primary regulatory agency from FEDERAL DEPOSIT INSURANCE CORPORATION to OFFICE OF THRIFT SUPERVISION |
| 7/24/1996 | Moved bank headquarters from WARREN, NJ to EL CAJON, CA |
| 8/30/1996 | Moved bank headquarters from EL CAJON, CA to OAKLAND, CA |
| 4/16/2001 | Changed name to **World Savings Bank, FSB** (27076) |
| 12/31/2007 | Moved bank headquarters from OAKLAND, CA to NORTH LAS VEGAS, NV |
| 12/31/2007 | Changed name to **Wachovia Mortgage, FSB** (27076) |
| 11/1/2009 | Changed name to **Wells Fargo Bank Southwest, National Association** (27076) |
| 11/1/2009 | Changed primary regulatory agency from OFFICE OF THRIFT SUPERVISION to COMPTROLLER OF THE CURRENCY |
| 11/1/2009 | Changed organization type to COMMERCIAL BANK |
| 11/1/2009 | Changed institution class to INSURED COMMERCIAL BANK, NATIONAL, MEMBER FRS |
| 11/1/2009 | **Merged into and subsequently operated as part of Wells Fargo Bank, National Association (3511) in SIOUX FALLS, SD** |
| 5/6/2011 | Reorganized. |
| 7/1/2011 | Reorganized. |
| 7/15/2011 | Reorganized. |
| 12/1/2011 | Reorganized. |
| 2/1/2012 | Reorganized. |

Exhibit "3"

Inst #: 201301030002089
Fees: $222.00
N/C Fee: $25.00
01/03/2013 01:54:01 PM
Receipt #: 1444309
Requestor:
LSI TITLE AGENCY INC.
Recorded By: RNS   Pge: 6
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

**RECORDING REQUESTED BY:**

**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC File No.   :   12-30356-WA-NV
Title Order No.   :   120023737-NV-GTI

APN: 163-30-612-002

---

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five (5) business days prior to the date set for the sale of your property pursuant to NRS 107.080. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

**NOTICE IS HEREBY GIVEN THAT : NATIONAL DEFAULT SERVICING CORPORATION is** either the original Trustee or the duly appointed substituted Trustee under a Deed of Trust dated 11/17/2004, executed by ROBERT LAFAYETTE, A MARRIED MAN, as Trustor, to secure certain obligations in favor of WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES as beneficiary recorded 11/23/2004 as Instrument No. 20041123-0003700 (or Book, Page) and Re-Recorded on 12/29/2011 as Instrument No. 201112290001959 (or Book, Page) for the reason of 'RIDER' of the Official Records of CLARK County, NV. Said obligations including ONE NOTE FOR THE ORIGINAL sum of $357,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :

The installments of principal and interest which became due on 10/15/2011 and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee fee's, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off (and will increase until your account becomes current) as summarized in the accompanying Affidavit of Authority to Exercise the Power of Sale pursuant to NRS 107.080.

Notice of Default and Election to Sell Under Deed of Trust
NDSC File No.:   12-30356-WA-NV
Page 2

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required by the Note and Deed of Trust or Mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by the transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.

c/o National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020  Phone 602/264-6101  Sales Website: www.ndscorp.com/sales/

Contact the following number to discuss Loan Modification Options: 919-852-7470

Attached hereto and incorporated herein by reference is the Affidavit of Authority to Exercise the Power of Sale pursuant to NRS 107.080.

You may wish to consult a credit-counseling agency to assist you.  The Department of Housing and Urban Development (HUD) can provide you with the name and address of the local HUD approved counseling agency by calling their Approved Local Housing Counseling Agency toll free number: (800) 569-4287 or you can go to the HUD web site at: http://portal.hud.gov/portal/page/portal/HUD/localoffices.

The Property Address: 9578 ADOBE ARCH COURT , LAS VEGAS NV 89148

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

- 1 -

T.S. No:     12-30356-WA-NV
APN:         163-30-612-002

AFFIDAVIT OF AUTHORITY IN SUPPORT OF NOTICE OF DEFAULT AND ELECTION
TO SELL [NRS § 107.080]

I, Joanna M. Gloria, am the Vice President Loan Documentation of Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"), the current beneficiary of the subject Deed of Trust ("Current Beneficiary".) or the authorized representative of the Current Beneficiary.  The borrower(s) identified in subject Deed of Trust is/are, Robert LaFayette, a married man.  The subject Deed of Trust encumbers the real property located at 9578 Adobe Arch Court, Las Vegas, NV 89148. This Affidavit is provided in support of the Notice of Default and Election to Sell.

The following facts are, except where otherwise indicated, are true of my own personal knowledge based upon my personal review of business records of Wells Fargo which have been represented to me to be true by persons employed by Wells Fargo who have a business duty to Wells Fargo to accurately and completely make, take and maintain those records in the regular and ordinary course of their business duties.  Where the following facts are not based on my personal knowledge, they are based on my personal review of documents which are of public record in the State of Nevada and/or documents created by third parties the accuracy of which Wells Fargo relies on in conducting its business of servicing mortgage loans.

1(a).    The full name and business address of the current trustee of record for the deed of trust at issue is National Default Servicing Corporation, An Arizona Corporation, which is located at 7720 N. 16th Street, Suite 300, Phoenix, Arizona 85020.

1(b).  The full name and business address of the current holder of the Note secured by the Deed of Trust at issue is Wells Fargo Bank, N.A., which is located at 4101 Wiseman Blvd, San Antonio, Texas 78251.

1(c).  The full name and business address of the Current Beneficiary for the obligation or debt secured by the Deed of Trust at issue is Wells Fargo Bank, N.A. which is located at 4101 Wiseman Blvd, San Antonio, Texas 78251.

1(d).  The full name and business address of the current servicer for the obligation secured by the Deed of Trust at issue is Wells Fargo Bank, N.A. which is located at 4101 Wiseman Blvd, San Antonio, Texas 78251.

2.  I further affirm that to the best of my knowledge, and from my review of the documents of public record, the full name and business address of each prior beneficiary of the Deed of Trust of which I am aware at issue is:

Name: World Savings Bank, FSB, its Successors and/or Assignees
Last known address: 1901 Harrison Street, Oakland, CA 94612
Instrument: Deed of Trust recorded 11/23/2004 as Instrument number 20041123-0003700.

- 2 -

Wells Fargo Bank, N.A. is the successor of a merger with Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB as evidenced by that certain official certification letter from the Office of the Comptroller of the Currency (OCC) dated November 1, 2009. Wachovia Mortgage, FSB was formerly known, prior to its name change, as World Savings Bank, FSB as evidenced by the Notice of Amendment of Charter and Bylaws letter from the Office of Thrift Supervision (OTS) dated November 19, 2007.

The other known prior beneficiaries (whether of record or not), if any, along with the date and manner of their acquisition of a beneficial interest in the Deed of Trust and their last known address, if any, are, to the best of my knowledge, set forth in Exhibit "A" hereto, if applicable, which is incorporated herein by this reference.

3.  The Current Beneficiary, the successor in interest of the beneficiary or the trustee of the Deed of Trust is in either actual or constructive possession of the Note secured by the Deed of Trust.

4.  The current trustee under the Deed of Trust has the authority to exercise the power of sale with respect to the subject Deed of Trust pursuant to the instruction of the Current Beneficiary of record and the current holder of the Note secured by the Deed of Trust.

5.  The following is information regarding the amount in default, the principal amount secured by the Deed of Trust, a good faith estimate of fees imposed and to be imposed because of the default and the costs and fees charged to the debtor in connection with the exercise of the power of sale.

5(a).   The total amount in default, as of December 26, 2012, is $37,829.31.
5(b).   As of December 26, 2012, the amount of fees and costs already charged to debtor because of the default is $3,374.82.  This amount is included in 5(a).
5(c).   As of December 26, 2012, the unpaid principal amount of the obligation or debt secured by the Deed of Trust is currently $395,333.36.
5(d).   As of December 26, 2012, as a good faith estimate, the amount of fees and costs to be imposed or charged to the debtor because of the default, excluding the foreclosure fees and costs set forth in Paragraph 5(e), below, will be $400.00.
5 (e) As a good faith estimate of the foreclosure fees and costs to be charged to the debtor in connection with the exercise of the power of sale under the Deed of Trust will be $2,490.00.

- 3 -

6. To the best of my knowledge, and if an Exhibit "A" is attached, it contains the date, recordation number or other unique designation of the instrument that conveyed the interest of each beneficiary and a description of the instrument that conveyed the interest of each beneficiary.

Wells Fargo Bank, N.A., directly or through an agent, has possession of the Promissory Note. Wells Fargo Bank, N.A. is either the original payee of the Promissory Note, or the Promissory note has been duly indorsed.

I declare under penalty of perjury of the laws of the State of Nevada that the foregoing is true and correct and that this Affidavit was executed on December 26, 2012.

By: _____

Printed Name: Joanna M. Gloria
As the: Vice President Loan Documentation
For: WELLS FARGO BANK, N.A.
Date: December 26, 2012


Name: Joanna M. Gloria
Title: Vice President Loan Documentation
Company: WELLS FARGO BANK, N.A.
Date: December 26, 2012


State of Texas          )
County of Bexar         )

Sworn and subscribed to before me this 26th day of December, 2012.

_____
        **Frank Anthony Vernon**
_____
Notary Public
My Commission expires: 12-10-2014

FRANK ANTHONY VERNON
Notary Public
State of Texas
My Comm. Exp. 12-10-2014

NV-057-V3
TS# 12-30356-WA-NV               APN: 163-30-612-002                        Page 3

Notice of Default and Election to Sell Under Deed of Trust
NDSC File No.:   12-30356-WA-NV
Page  3

**That by reason thereof, the present beneficiary under such Deed of Trust has executed and delivered to duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.**

**Dated   :        January 2, 2013**

**National Default Servicing Corporation, As Trustee for Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.**

By: Julie Good, Trustee Sale Supervisor

State of: Arizona
County of: Maricopa

On _____, 20___ before me, the undersigned, a Notary Public for said State, personally appeared Julie Good  personally known to me be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

OFFICIAL SEAL
JUDY A. REYNOLDS
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires April 20, 2013

Signature _____

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Exhibit "4"

Inst #: 201312270000799
Fees: $19.00
N/C Fee: $0.00
12/27/2013 09:57:44 AM
Receipt #: 1884195
Requestor:
LSI TITLE AGENCY INC.
Recorded By: ECM   Pge: 3
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
National Default Servicing Corporation
7720 N..16th Street, Suite 300
Phoenix, AZ 85020

| | | |
|---|---|---|
| NDSC File No. | : | 12-30356-WA-NV |
| Title Order No. | : | 120023737-NV-GTI |
| APN No. | : | **163-30-612-002** |

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/17/2004 UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY; IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that **National Default Servicing Corporation** as trustee (or successor trustee, or substituted trustee), pursuant to the Deed of Trust executed by **ROBERT LAFAYETTE, A MARRIED MAN**, dated 11/17/2004 and recorded 11/23/2004 as Instrument No. 20041123-0003700 (or Book, Page) and Re-Recorded on 12/29/2011 as Instrument No. 201112290001959 (or Book, Page) for the reason of **'RIDER'** of the Official Records of **CLARK** County, State of NV, and pursuant to the Notice of Default and Election to Sell thereunder recorded 01/03/2013 as Instrument No. 201301030002089 (or Book , Page ) of said Official Records.

Date and Time of Sale:  01/22/2014 at 10:00 AM
Place of Sale:  At the front entrance to Nevada Legal News located at 930 S. 4th Street, Las Vegas, NV 89101

Property will be sold at public auction, to the highest bidder for cash (in the forms which are lawful tender in the United States, payable in full at time of sale), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and more fully described in Exhibit "A" attached hereto and made a part hereof.

The street address and other common designation, if any, of the real property described above is purported to be:

    9578 ADOBE ARCH COURT
    LAS VEGAS, NV  89148

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The amount of the unpaid principal balance and accrued interest of the obligation secured by the property to be sold and reasonable costs, expenses and advances at the time of the initial publications of the Notice of Sale is $443,103.06.  The opening bid at the time of the sale may be more or less than this amount depending on the total indebtedness owed and /or the fair market of the property.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Page 2
Notice of Trustee's Sale
NDSC File No.   :   12-30356-WA-NV

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed until funds become available to the payee or endorsee as a matter of right.

Said sale will be made, in an "as is" condition, without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid balance of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The lender is unable to validate the condition, defects or disclosure issues of said property and Buyer waives the disclosure requirements under NRS 113.130 by purchasing at this sale and signing said receipt.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date: 12/26/2013

**National Default Servicing Corporation**
**7720 N. 16ᵗʰ Street, Suite 300**
**Phoenix, AZ 85020**
**602-264-6101**
**Sales Line : 480-257-2444 Sales Website: www.ndscorp.com/sales**

By: _____
     Nichole Alford, Trustee Sales Representative

State of: Arizona
County of: Maricopa

On ___1/2/20___, 2013, before me, the undersigned, a Notary Public for said State, personally appeared Nichole Alford personally known to me be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

Signature _____

LINDSAY ROSEBOOM
Notary Public, State of Arizona
Maricopa County
My Commission Expires
October 31, 2017

**Exhibit A**

**NDSC Notice of Sale Addendum**

| | | |
|---|---|---|
| NDSC No. | : | 12-30356-WA-NV |
| PROP. ADDRESS | : | 9578 ADOBE ARCH COURT |
| | | LAS VEGAS, NV  89148 |
| COUNTY | : | CLARK |

**LEGAL DESCRIPTION :**

LOT 2 IN BLOCK 1 OF GRANDBROOKE V, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 100 OF PLATS, PAGE 78 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

Exhibit "5"

Inst #: 20150731-0000487
Fees: $19.00
N/C Fee: $0.00
07/31/2015 08:02:42 AM
Receipt #: 2513917
Requestor:
SERVICELINK TITLE AGENCY IN
Recorded By: LEX   Pgs: 3
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

| | | |
|---|---|---|
| NDSC File No. | : | 12-30356-WA-NV |
| Title Order No. | : | 120023737-NV-GTI |
| APN No. | : | 163-30-612-002 |

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/17/2004 UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY; IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that **National Default Servicing Corporation** as trustee (or successor trustee, or substituted trustee), pursuant to the Deed of Trust executed by **ROBERT LAFAYETTE, A MARRIED MAN**, dated 11/17/2004 and recorded 11/23/2004 as Instrument No. 20041123-0003700 (or Book, Page) and Re-Recorded on 12/29/2011 as Instrument No. 201112290001959 (or Book, Page) for the reason of **'RIDER'** of the Official Records of **CLARK** County, State of NV, and pursuant to the Notice of Default and Election to Sell thereunder recorded 01/03/2013 as Instrument No. 201301030002089 (or Book , Page ) of said Official Records.

**Date and Time of Sale:**  08/26/2015 at 10:00 AM
**Place of Sale:  At the front entrance to Nevada Legal News located at 930 S. 4th Street, Las Vegas, NV 89101**

Property will be sold at public auction, to the highest bidder for cash (in the forms which are lawful tender in the United States, payable in full at time of sale), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and more fully described in Exhibit "A" attached hereto and made a part hereof.

The street address and other common designation, if any, of the real property described above is purported to be:

     **9578 ADOBE ARCH COURT**
     **LAS VEGAS, NV  89148**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The amount of the unpaid principal balance and accrued interest of the obligation secured by the property to be sold and reasonable costs, expenses and advances at the time of the initial publications of the Notice of Sale is $471,949.76.  The opening bid at the time of the sale may be more or less than this amount depending on the total indebtedness owed and /or the fair market of the property.

     **BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Page 2
Notice of Trustee's Sale
NDSC File No.   :   12-30356-WA-NV

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.  In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed until funds become available to the payee or endorsee as a matter of right.

Said sale will be made, in an "as is" condition, without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid balance of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The lender is unable to validate the condition, defects or disclosure issues of said property and Buyer waives the disclosure requirements under NRS 113.130 by purchasing at this sale and signing said receipt.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date: 07/30/2015

**National Default Servicing Corporation**
7720 N. 16th Street, Suite 300
**Phoenix, AZ 85020**
602-264-6101
Sales Line : 480-257-2444 Sales Website: www.ndscorp.com/sales

By: _____
Zahara Joyner, Trustee Sales Representative

State of Arizona
County of: Maricopa

On _____ 7.30, 20 15, before me, the undersigned, a Notary Public for said State, personally appeared Zahara Joyner personally known to me be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

Signature _____

**JUDY QUICK**
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Commission Expires
April 20, 2017

**Exhibit A**

**NDSC Notice of Sale Addendum**

| | | |
|---|---|---|
| NDSC No. | : | 12-30356-WA-NV |
| PROP. ADDRESS | : | 9578 ADOBE ARCH COURT |
| | | LAS VEGAS, NV  89148 |
| | | |
| COUNTY | : | CLARK |

**LEGAL DESCRIPTION :**

LOT 2 IN BLOCK 1 OF GRANDBROOKE V, AS SHOWN BY MAP THEREOF ON FILE IN
BOOK 100 OF PLATS, PAGE 78 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
COUNTY, NEVADA

Exhibit "6"



Inst #: 20150901-0001527
Fees: $18.00
N/C Fee: $0.00
09/01/2015 12:34:46 PM
Receipt #: 2542694
Requestor:
ROBERT LAFAYETTE
Recorded By: SAO   Pgs: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

Recording requested by and
When recorded return to:
ROBERT LAFAYETTE
9578 ADOBE ARCH COURT
LAS VEGAS, NEVADA  89148

Assessor Number: #163-30-612-002
Loan Number: ▇▇▇▇▇▇▇▇
9578 Adobe Arch Court, Las Vegas, Nevada 89148

Space above this line for Recorder's use only

## NOTICE OF LIS PENDENS

**TO ALL PERSONS be it known of the pending litigation IN THE BANKRUPTCY COURT OF NEVADA IN AND FOR CLARK COUNTY with case # 14-10235-BTB**

## NOTICE OF STAY AND ADVERSE CLAIM

**LEGAL DESRIPTION:**

**Lot 2 in Block 1 of Grandbrooke V, as shown by map thereof on file in Book 100 of Plats, Page 78 in the Office of the County Recorder of Clark County, Nevada.**

**THE ADDRESS ON SAID PROPERTY:  9578 ADOBE ARCH COURT, LAS VEGAS, NEVADA, 89148**

**To Trustee,**
**Should you decide to move forward with the sale despite this notice, you are not only going to be named as a codefendant, but you will be guilty of a criminal offence of extortion.  As Trustor/Grantor, we can also act as private attorney generals and prosecute you.  This notice and evidence of your sale will be enough give to the FBI to investigate this complaint.  And yes, I will be pressing charges.**

**This issue is in contest and is being adjudicated by the court.  Until this matter is settled, moving forward is a violation of due process of law. Before this notice, you were immune because you were not aware of the controversy.  After this notice, you were informed of the controversy, but you chose to ignore the warning and did it anyway.**

**You have been warned.  Govern yourself accordingly.**

_[signature]_
WITNESS

_[signature]_
ROBERT LAFAYETTE

**JURAT**

State of NEVADA          )
                         ) ss:
County of CLARK          )

Subscribed and sworn to (or affirmed) before me on this ___/___ day of
_September_, ___2016___, by _Robert Lafayette_, proved
to me on the basis of satisfactory evidence to be the person who appeared before me.

_[signature]_
Notary

My Commission expires: ___12/19/2017___

NONA ABAD
Notary Public, State of Nevada
Appointment No. 02-73237-1
My Appt. Expires Dec 19, 2017

# Exhibit "7"

A- 15- 7 2 3 4 0 1 - C
V

## DISTRICT COURT CIVIL COVER SHEET

County, Nevada

Case No. _____
*(Assigned by Clerk's Office)*

### I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| ROBERT LAFAYETTE<br>9578 ADOBE ARCH COURT<br>LAS VEGAS, NV 89148 | WELLS FARGO HOME MORTGAGE<br><br>NATIONAL DEFAULT SERVING CORP<br>7720 N16TH ST #300 PHOENIX AZ<br>(SBD) |
| Attorney (name/address/phone):<br>STEVEN J. SZOSTEK, ESQ<br>1848 N. SAHARA AVE<br>LAS VEGAS, NV 89117<br>702 325 6224 | Attorney (name/address/phone):<br>PITE DUNCAN LLP<br>520 S. 4TH ST #360<br>LAS VEGAS, NV 89101 |

### II. Nature of Controversy *(please select the one most applicable filing type below)*

Civil Case Filing Types

| Real Property | Negligence | Torts |
|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** |
| ☐ Unlawful Detainer | ☐ Auto | ☐ Product Liability |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Intentional Misconduct |
| **Title to Property** | ☐ Other Negligence | ☐ Employment Tort |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort |
| ☐ Other Title to Property | ☐ Medical/Dental | ☐ Other Tort |
| **Other Real Property** | ☐ Legal | |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | |
| ☒ Other Real Property | ☐ Other Malpractice | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Foreclosure Mediation Case |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Petition to Seal Records |
| ☐ Special Administration | **Contract Case** | ☐ Mental Competency |
| ☐ Set Aside | ☐ Uniform Commercial Code | **Nevada State Agency Appeal** |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Department of Motor Vehicle |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Worker's Compensation |
| **Estate Value** | ☐ Commercial Instrument | ☐ Other Nevada State Agency |
| ☐ Over $200,000 | ☐ Collection of Accounts | **Appeal Other** |
| ☐ Between $100,000 and $200,000 | ☐ Employment Contract | ☐ Appeal from Lower Court |
| ☐ Under $100,000 or Unknown | ☐ Other Contract | ☐ Other Judicial Review/Appeal |
| ☐ Under $2,500 | | |

| Civil Writ | | Other Civil Filing |
|---|---|---|
| **Civil Writ** | | **Other Civil Filing** |
| ☐ Writ of Habeas Corpus | ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim |
| ☐ Writ of Mandamus | ☐ Other Civil Writ | ☐ Foreign Judgment |
| ☐ Writ of Quo Warrant | | ☐ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

8-20-2015
Date

Signature of initiating party or representative

*See other side for family-related case filings.*

Electronically Filed
08/20/2015 03:52:39 PM

CLERK OF THE COURT

Steven J. Szostek, Esq.
Nevada Bar No. 3904
STEVEN J. SZOSTEK, LTD.
7848 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 325-6224 [voice]
(702) 940-3041 [fax]
Szostek1946@gmail.com
Attorney for Plaintiff
ROBERT LAFAYETTE

# DISTRICT COURT

## CLARK COUNTY, NEVADA

ROBERT LAFAYETTE, an individual,

        Plaintiff,

v.

WELLS FARGO HOME MORTGAGE, a corporation, and NATIONAL DEFAULT SERVICING CORPORATION, a corporation;

        Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: A-15-723401-C

Dept. No.:

PLAINTIFF'S VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION AND EX-PARTE ORDER FOR AN ORDER SHORTENING TIME

DATE OF HEARING:

TIME OF HEARING:

    COMES NOW Plaintiff, ROBERT LAFAYETTE [hereinafter LAFAYETTE] and does allege and complain against Defendants WELLS FARGO HOME MORTGAGE [hereinafter WELLS FARGO] and NATIONAL DEFAULT SERVICING CORPORATION as follows:

I.    GENERAL ALLEGATIONS.

    1.    LAFAYETTE resides at 9578 Adobe Arch Court, Las Vegas, NV 89148 and the real property at this location [hereinafter the REAL PROPERTY] is the subject of this action. Jurisdiction is proper in this Court and in Clark County, Nevada.

    2.    WELLS FARGO is a nationwide bank and mortgage lender. WELLS FARGO was the lender to LAFAYETTE to secure the purchase of the REAL PROPERTY. WELLS

4

1   FARGO is the holder of the promissory note and deed of trust executed by LAFAYETTE in

2   favor of WELLS FARGO upon the closing of the sale in 2005. WELLS FARGO thereafter

3   created an account for the promissory note with an account number of 00264564.

4         3.      NATIONAL DEFAULT SERVICING CORPORATION [hereinafter referred to

5   as NATIONAL] is the agent of WELLS FARGO and is the named Trustee of the deed of trust

6   executed by LAFAYETTE in favor of WELLS FARGO and represented as account number

7   00264564 in the records of WELLS FARGO.

8   **II.    BACKGROUND FACTS.**

9         4.      LAFAYETTE filed for Bankruptcy on January 15, 2014 and was assigned case

10  no. 14-10235. He listed the promissory note in his bankruptcy filing as a priority unsecured debt.

11  WELLS FARGO was listed as a creditor in LAFAYETTE's bankruptcy and received notice of

12  the filing. Subsequently, WELLS FARGO, through its local attorneys, Pite Duncan, LLP, 520

13  South 4th Street, Suite 350, Las Vegas, NV 89101, filed two special requests for notice in the

14  bankruptcy case so they would receive all filings in the case. WELLS FARGO did not file a

15  claim in the bankruptcy or a request for the Bankruptcy Court to determine if the debt on the

16  REAL PROPERTY was dischargeable. WELLS FARGO, under the provisions of 11 U.S.C.

17  523(a)(3)(A) and (B), had amble time to file a claim in the case and amble time to file a motion

18  in the Bankruptcy Court for a determination on the dischargeability of the debt on the REAL

19  PROPERTY, but chose not to do so.

20        5.      LAFAYETTE's bankruptcy case was granted a discharge by the Bankruptcy

21  Court on January 15, 2015.

22        6.      Subsequent to the granting of the discharge in LAFAYETTE's bankruptcy case,

23  LAFAYETTE received a letter from Benjamin Fogle, Executive Mortgage Specialist, customer

24  Care and Recovery Group of WELLS FARGO. A copy of this letter is attached hereto as Exhibit

25  "A" [hereinafter referred to as the WELLS FARGO LETTER]. The WELLS FARGO LETTER

specifically states:

"On March 24, 2015, we notified the consumer reporting agencies listed below to update their records to reflect that this account  [account number 0026424564] was discharged through chapter 7 bankruptcy, thus causing the reports to reflect the account is closed with a zero balance."

7.     The following points should be clear to the Court from the WELLS FARGO LETTER:

a.     Mr. Fogle, as an Executive Mortgage Specialist for WELLS FARGO, had the authority from WELLS FARGO to make the statements contained in the WELLS FARGO LETTER and to send the WELLS FARGO LETTER to LAFAYETTE.

b.     As of March 25, 2015, the balance due and owing under the mortgage account number 0026424564 was $0.00 and, **under the records of WELLS FARGO**,  no monies were then owing to WELLS FARGO by LAFAYETTE under said account.

8.     On July 30, 2015, NATIONAL issued a "NOTICE OF TRUSTEE'S SALE" [attached hereto as Exhibit "B", hereinafter referred to as the TRUSTEE'S NOTICE] that stated that the REAL PROPERTY was to be sold at auction on August 26, 2015, based upon the provisions of the deed of trust execution by LAFAYETTE in favor of WELLS FARGO, which, as noted hereinabove, is represented in the records of WELLS FARGO as account number 0026424564. A foreclosure will cause LAFAYETTE to lose his home and vacate his residence on the REAL PROPERTY. The loss of a residence cannot be compensated monetarily.

III.     **ARGUMENT**

9.     The WELLS FARGO LETTER and the TRUSTEE'S NOTICE are in direct contradiction of each other. It is LAFAYETTE's position that when an authorized WELLS FARGO employee stated that the debt owed to WELLS FARGO by LAFAYETTE represented by account number 0026424564 was discharged in bankruptcy and balance reduced to $0.00 that

3

WELLS FARGO, and its agent NATIONAL, lost the right to foreclose on the REAL PROPERTY, since there is no debt owing to WELLS FARGO by LAFAYETTE and there is no debt for which the sale proceeds of a foreclosure can be applied to. Thus, LAFAYETTE believes that neither WELLS FARGO nor NATIONAL have the authority under the deed of trust to foreclose on the REAL PROPERTY.

10.     LAFAYETTE requests that NATIONAL, as agent for WELLS FARGO, be enjoined by the Court from conducting the above-noted foreclosure until the Court can made its determination in this matter.

11.     This application is based upon Rule 65 of NRCP, the accompanying declaration and exhibits, Memorandum of Points and Authorities, and any additional argument this Court chooses to conduct.

12.     The Verification of this Application of ROBERT LAFAYETTE is attached hereto as Exhibit "C"

13.     A proposed Ex-Parte Order Granting Temporary Restraining Order is attached hereto as Exhibit "D"

**Dated this 20th day of August, 2015.**

Steven J. Szostek

**Steven J. Szostek, Esq.**
**Nevada Bar No. 3904**
**STEVEN J. SZOSTEK, LTD.**
**7848 West Sahara Avenue**
**Las Vegas, Nevada 89117**
**(702) 325-6224 [voice]**
**(702) 940-3041 [fax]**
**Szostek1946@gmail.com**
**Attorney for Plaintiff**
**ROBERT LAFAYETTE**

4

## ORDER SHORTENING TIME

Good cause appearing, it is hereby ordered that the foregoing PLAINTIFF'S

APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR

PRELIMINARY INJUNCTION AND EX-PARTE ORDER FOR AN ORDER SHORTENING

TIME shall be heard on shortened time on ___1st___ day of ~~August,~~ October 2015 at _9:00 am_, _m in

Department __V__ of the Eighth Judicial District Court.

Dated this _____ day of August, 2015

~~DISTRICT COURT JUDGE~~ _SgS_

Respectfully submitted,

Steven J. Szostek, Esq.
Nevada Bar No. 3904
STEVEN J. SZOSTEK, LTD.
7848 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 325-6224 [voice]
(702) 940-3041 [fax]
Szostek1946@gmail.com
Attorney for Plaintiff
ROBERT LAFAYETTE

## DECLARATION OF STEVEN J. SZOSTEK, ESQ.

I, Steven J. Szostek, Esq. declare:

1.    I am the attorney for ROBERT LAFAYETTE, the Plaintiff in the above-entitled action.

2.    On August 19, 2015, I attempted to telephone Zahara Joyner, the named Trustee Sales Representative who signed the Notice of Trustee's Sale on July 30, 2015 for Trustee National Default Servicing Corporation to request that the pending foreclosure of ROBERT LAFAYETTE's residence be postponed so that the Court could hear and decide on ROBERT LAFAYETTE's argument that neither Wells Fargo Home Mortgage nor National Default Servicing Corporation had the authority to foreclose on ROBERT LAFAYETTE's residence.

3.    Ms. Joyner was not available when I called and I requested that she be given a message to telephone me at her earliest convenience to discuss the foreclosure noted in the Notice.

4.    To date, Ms. Joyner has not returned my telephone call, nor has any other representative of National Default Servicing Corporation.

5.    Based on the foregoing, counsel submits that good cause exists to hear ROBERT LAFAYETTE's Application on an Order Shortening Time.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

**Dated this 20th day of August, 2015**

Steven J. Szostek, Esq.

6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    FACTUAL BACKGROUND**

1.      LAFAYETTE filed for Bankruptcy on January 15, 2014 and was assigned case no. 14-10235. He listed the promissory note in his bankruptcy filing as a priority unsecured debt. WELLS FARGO was listed as a creditor in LAFAYETTE's bankruptcy and received notice of the filing. Subsequently, WELLS FARGO, through its local attorneys, Pite Duncan, LLP, 520 South 4th Street, Suite 350, Las Vegas, NV 89101, filed two special requests for notice in the bankruptcy case so they would receive all filings in the case. WELLS FARGO did not file a claim in the bankruptcy or a request for the Bankruptcy Court to determine if the debt on the REAL PROPERTY was dischargeable. WELLS FARGO, under the provisions of 11 U.S.C. 523(a)(3)(A) and (B), had amble time to file a claim in the case and amble time to file a motion in the Bankruptcy Court for a determination on the dischargeability of the debt on the REAL PROPERTY, but chose not to do so.

2.      LAFAYETTE's bankruptcy case was granted a discharge by the Bankruptcy Court on January 15, 2015.

3.      Subsequent to the granting of the discharge in LAFAYETTE's bankruptcy case, LAFAYETTE received a letter from Benjamin Fogle, Executive Mortgage Specialist, customer Care and Recovery Group of WELLS FARGO. A copy of this letter is attached hereto as Exhibit "A" [hereinafter referred to as the WELLS FARGO LETTER]. The WELLS FARGO LETTER specifically states:

> "On March 24, 2015, we notified the consumer reporting agencies listed below to update their records to reflect that this account  [account number 0026424564] was discharged through chapter 7 bankruptcy, thus causing the reports to reflect the account is closed with a zero balance."

## II.    ARGUMENT

4.      A temporary restraining order should issue against WELLS FARGO and NATIONAL. NRCP 65 provides for the issuance of a temporary restraining order to preserve the status quo pending a hearing on a preliminary injunction when it appears from the facts set forth by an affidavit or verified complaint that immediate and irreparable injury will result to the applicant in the interim. **See State ex rel Friedman v. Eighth Judicial Dist. Ct.,** 81 Nev. 131 (1965).

### A.    THE STANDARD FOR INJUNCTIVE RELIEF

Injunctive relief is available where (1) the moving party enjoys a reasonable likelihood of success on the merits, and (2) the non-moving party's conduct, if permitted to continue, will result in irreparable harm from which compensatory damages are an inadequate remedy. Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC, 215 P. 3d 27, 31 (Nev. 2009); Dep't of Conservation & Natural Res. Div. of Water Res. V. Foley, 121 Nev. 77, 80, 109 P.3d 760, 762 (2005). As discussed herein, the conduct of WELLS FARGO and NATIONAL, its agent, meet the injunction test such that the relief requested by LAFAYETTE should be granted.

The decision to "grant or deny a preliminary injunction is i=within the district court's sound discretion" Labor Com'r of State of Nev. v. Littlefield, 123 Nev. 35, 38, 153 P. 3d 26, 28 (2007).

5.      The following points should be clear to the Court from the WELLS FARGO LETTER:

a.      Mr. Fogle, as an Executive Mortgage Specialist for WELLS FARGO, had the authority from WELLS FARGO to make the statements contained in the WELLS FARGO LETTER and to send the WELLS FARGO LETTER to LAFAYETTE.

b.      As of March 25, 2015, the balance due and owing under the mortgage account number 0026424564 was $0.00 and, **under the records of WELLS FARGO**, no monies were then owing to WELLS FARGO by LAFAYETTE under said account.

6.      On July 30, 2015, NATIONAL issued a "NOTICE OF TRUSTEE'S SALE" [attached hereto as Exhibit "B", hereinafter referred to as the TRUSTEE'S NOTICE] that stated that the REAL PROPERTY was to be sold at auction on August 26, 2015, based upon the provisions of the deed of trust execution by LAFAYETTE in favor of WELLS FARGO, which, as noted hereinabove, is represented in the records of WELLS FARGO as account number 0026424564. A foreclosure will cause LAFAYETTE to lose his home and vacate his residence on the REAL PROPERTY. The loss of a residence cannot be compensated monetarily.

7.      The WELLS FARGO LETTER and the TRUSTEE'S NOTICE are in direct contradiction of each other. It is LAFAYETTE's position that when an authorized WELLS FARGO employee stated that the debt owed to WELLS FARGO by LAFAYETTE represented by account number 0026424564 was discharged in bankruptcy and balance reduced to $0.00 that WELLS FARGO, and its agent NATIONAL, lost the right to foreclose on the REAL PROPERTY, since there is no debt owing to WELLS FARGO by LAFAYETTE and there is no debt for which the sale proceeds of a foreclosure can be applied to. Thus, LAFAYETTE believes that neither WELLS FARGO nor NATIONAL have the authority under the deed of trust to foreclose on the REAL PROPERTY.

/

/

8.   LAFAYETTE requests that NATIONAL, as agent for WELLS FARGO, be enjoined by the Court through a temporary restraining order and preliminary injunction from conducting the above-noted foreclosure until the Court can made its determination in this matter.

Dated this 20th day of August, 2015.

Steven J. Szostek, Esq.
Nevada Bar No. 3904
STEVEN J. SZOSTEK, LTD.
7848 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 325-6224 [voice]
(702) 940-3041 [fax]
Attorney for Plaintiff
ROBERT LAFAYETTE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 20, 2015, I served a true and correct copy of the above and foregoing **PLAINTIFF'S VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION AND EX-PARTE ORDER FOR AN ORDER SHORTENING TIME** as follows:

1.   VIA HAND DELIVERY to:
     Pite Duncan, LLLP
     520 South 4th Street, Suite 360
     Las Vegas, NV 89101
     Attorneys for Wells Fargo Home Mortgage

2.   VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED

     Zahara Joyner, Trustee Sales Representative
     National Default Servicing Corporation
     7720 North 16th Street, Suite 300
     Phoenix, AZ 85020

Steven J. Szostek, Esq.
Attorney for Plaintiff
ROBERT LAFAYETTE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

EXHIBIT "A"

H



Wells Fargo
P.O. Box 10335
Des Moines, IA 50306-0335

March 25, 2015

Robert Lafayette
9578 Adobe Arch Ct.
Las Vegas, NV 89148

Subject: Resolution to your inquiry regarding account number ████████

Dear Mr. Robert Lafayette:

Thank you for the opportunity to address your request that we update your credit report to reflect that this account was discharged through your chapter 7 bankruptcies. We've carefully considered what we can do and are providing our response.

On March 24, 2015, we notified the consumer reporting agencies listed below to update their records to reflect that this account was discharged through chapter 7 bankruptcy, thus causing the reports to reflect the account as closed with a zero balance. Please note, it may take up to 90 days for the consumer reporting agencies to reflect these changes on your credit report.

CBI (Credit Bureau, Inc.)          Trans Union Credit
Equifax Information Technology     Information Company
1-800-685-1111                      1-800-888-4213

Innovis UDF Processing Center      Experian
1-800-457-0207                      1-888-397-3742

**Going forward**

If you have any additional questions or need clarification regarding the information provided in this letter, please contact me directly at 1-800-853-8516, extension 67206. I am available to assist you Monday through Friday, 6:00 a.m. to 3:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Benjamin Fogle
Executive Mortgage Specialist
Customer Care and Recovery Group

If you have received a discharge and the loan was not reaffirmed in the bankruptcy case, we will only exercise our rights against the property and are not attempting any act to collect the discharged debt from you personally.

EX003/7AY/cc1325899/ge3461946/clWPP

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

EXHIBIT "B"

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC File No.     :     12-30356-WA-NV
Title Order No.   :     120023737-NV-GTI
APN No.           :     163-30-612-002

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/17/2004 UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY; IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that National Default Servicing Corporation as trustee (or successor trustee, or substituted trustee), pursuant to the Deed of Trust executed by ROBERT LAFAYETTE, A MARRIED MAN, dated 11/17/2004 and recorded 11/23/2004 as Instrument No. 20041123-0003700 (or Book, Page) and Re-Recorded on 12/29/2011 as Instrument No. 201112290001959 (or Book, Page) for the reason of 'RIDER' of the Official Records of CLARK County, State of NV, and pursuant to the Notice of Default and Election to Sell thereunder recorded 01/03/2013 as Instrument No. 201301030002089 (or Book , Page ) of said Official Records.

Date and Time of Sale:  08/26/2015 at 10:00 AM
Place of Sale:  At the front entrance to Nevada Legal News located at 930 S. 4th Street, Las Vegas, NV 89101

Property will be sold at public auction, to the highest bidder for cash (in the forms which are lawful tender in the United States, payable in full at time of sale), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and more fully described in Exhibit "A" attached hereto and made a part hereof.

The street address and other common designation, if any of the real property described above is purported to be:

     9578 ADOBE ARCH COURT
     LAS VEGAS, NV  89148

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The amount of the unpaid principal balance and accrued interest of the obligation secured by the property to be sold and reasonable costs, expenses and advances at the time of the initial publications of the Notice of Sale is $471,949.76. The opening bid at the time of the sale may be more or less than this amount depending on the total indebtedness owed and / or the fair market of the property.

    **BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Page 2
Notice of Trustee's Sale
NDSC File No. :   12-30356-WA-NV

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a
state or federal credit union, or a check drawn by a state or federal savings and loan association, savings
association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this
state. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's
Deed until funds become available to the payee or endorsee as a matter of right.

Said sale will be made, in an "as is" condition, without covenant or warranty, express or implied, regarding title,
possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with
interest as provided therein, and the unpaid balance of the Note secured by said Deed of Trust with interest
thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said
Deed of Trust. The lender is unable to validate the condition, defects or disclosure issues of said property and
Buyer waives the disclosure requirements under NRS 113.130 by purchasing at this sale and signing said receipt.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be
the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date: 07/30/2015

National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020
602-264-6101
Sales Line : 480-257-2444 Sales Website: www.ndscorp.com/sales

By: _____
Zahara Joyner, Trustee Sales Representative

State of Arizona
County of Maricopa

On _____ 7-30_, 20 15, before me, the undersigned, a Notary Public for said State, personally
appeared Zahara Joyner personally known to me be (or proved to me on the basis of satisfactory evidence) to be
the person whose name is subscribed to the within instrument and acknowledged to me that she executed the
same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf
of which the person acted, executed the instrument.

WITNESS my hand and official seal.

JUDY QUICK
NOTARY PUBLIC – ARIZONA
MARICOPA COUNTY
My Commission Expires
April 20, 2017

Signature _____

Exhibit A

NDSC Notice of Sale Addendum

NDSC No.              :        12-30356-WA-NV
PROP. ADDRESS         :        9578 ADOBE ARCH COURT
                               LAS VEGAS, NV  89148

COUNTY                :        CLARK

LEGAL DESCRIPTION :

LOT 2 IN BLOCK 1 OF GRANDBROOKE V, AS SHOWN BY MAP THEREOF ON FILE IN
BOOK 100 OF PLATS, PAGE 78 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
COUNTY, NEVADA

**EXHIBIT "C"**
**VERIFICATION BY ROBERT LAFAYETTE**

COMES NOW ROBERT LAFAYETTE, and having been sworn upon his oath, does state as follows:

    1.    I am over the age of 18 years and competent to testify as to the matters contained herein.

    2.    I have caused to be drafted the attached PLAINTIFF'S VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION AND EX-PARTE ORDER FOR AN ORDER SHORTENING TIME. I have read such Application and believe that the wording therein is true and correct to the best of my knowledge.

**FURTHER AFFIANT SAYETH NOT.**

Dated this 20th day of August, 2015

_Robert L. Fayette_
ROBERT LAFAYETTE

STATE OF NEVADA    )
                    )   SS:
COUNTY OF CLARK    )

On this 20 day of August, 20 15 before me, Stephanie Michael, a Notary Public, personally appeared ROBERT LAFAYETTE, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to within the instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Stephanie Michael_
Notary Public

STEPHANIE MICHAEL
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 01-17-18
Certificate No: 14-12894-1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**EXHIBIT "D"**

Steven J. Szostek, Esq.
Nevada Bar No. 3904
STEVEN J. SZOSTEK, LTD.
7848 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 325-6224 [voice]
(702) 940-3041 [fax]
Szostek1946@gmail.com
Attorney for Plaintiff
ROBERT LAFAYETTE

DISTRICT COURT

CLARK COUNTY, NEVADA

ROBERT LAFAYETTE, an individual,          )   Case No.:
                                          )
            Plaintiff,                     )   Dept. No.:
                                          )
v.                                        )
                                          )   DATE OF HEARING:
WELLS FARGO HOME MORTGAGE, a              )
corporation, and NATIONAL DEFAULT        )   TIME OF HEARING:
SERVICING CORPORATION, a                  )
corporation;                              )
                                          )
            Defendant                     )
                                          )

ORDER GRANTING TEMPORARY RESTRAINING ORDER

Plaintiff ROBERT LAFAYETTE, having submitted to this Court his Ex-Parte

application for Temporary Restraining Order and for Preliminary injunction, this Court having

review the papers and pleadings on file herein and for good cause appearing, therefor

IT IS HEREBY ORDERD THAT Plaintiff's Application for Temporary Restraining

Order is hereby GRANTED, and it is

FURTHER ORDERED that National Default Servicing Corporation  is hereby

restrained from proceeding with the foreclosure noted in that certain NOTICE OF TRUSTEE'S

SALE, dated July 30, 2015 on the real property located at 9578 Adobe Arch Court, Las Vegas, NV 89148.

**IT IS SO ORDERED**

Dated this _____ day of August, 2015

_____

**DISTRICT COURT JUDGE**

Respectfully submitted,

*[signature]*

Steven J. Szostek, Esq.
Nevada Bar No. 3904
**STEVEN J. SZOSTEK, LTD.**
7848 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 325-6224 [voice]
(702) 940-3041 [fax]
Szostek1946@gmail.com
Attorney for Plaintiff
**ROBERT LAFAYETTE**

Exhibit "8"

Electronically Filed
09/14/2015 05:51:39 PM

1    **NOEJ**
LAUREL I. HANDLEY (NV Bar # 9576)

2    JORY C. GARABEDIAN (NV Bar # 10352)
**ALDRIDGE PITE, LLP**

3    520 South 4th Street, Suite 360
Las Vegas, Nevada 89101

4    Telephone: (858) 750-7600
Facsimile: (702) 685-6342

5    E-mail: jgarabedian@aldridgepite.com

6    Attorneys for Defendant WELLS FARGO HOME MORTGAGE

**CLERK OF THE COURT**

7

8                          **DISTRICT COURT**

9                  **CLARK COUNTY, NEVADA**

10    ROBERT LAFAYETTE, an individual,      Case No.  A-15-723401-C

11        Plaintiff,                     Dept. No.  V

12    vs.

13    WELLS FARGO HOME MORTGAGE, a      **NOTICE OF ENTRY OF ORDER**
corporation, and NATIONAL DEFAULT     **DISSOLVING TEMPORARY**

14    SERVICING CORPORATION, a corporation,   **RESTRAINING ORDER AND DENYING**
                                        **MOTION FOR PRELIMINARY**

15        Defendants.                    **INJUNCTION**

16

17         PLEASE TAKE NOTICE that an Order was duly entered in the above-entitled matter on

18    the 9ᵗʰ day of September, 2015, a copy of which is attached hereto.

19    Dated: ___9/14/2015___             ALDRIDGE PITE, LLP

20

21

22                                  LAUREL I. HANDLE
                                 JORY C. GARABEDIAN

23                                  *Attorneys for Defendant*
                                 *WELLS FARGO HOME MORTGAGE*

24

25

26

27

28

                                 - 1 -

# CERTIFICATE OF SERVICE

I, the undersigned, declare: I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action. My business address is 520 South 4th Street, Suite 360, Las Vegas, Nevada 89101.

I hereby certify that on September 14, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Steven J. Szostek, Esq.. szostel1946@gmail.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___14th___ day of September, 2015, at Las Vegas, Nevada.

NATASHA D. PETTY

1   ORDR
    LAUREL I. HANDLEY (NV Bar # 9576)
2   JORY C. GARABEDIAN (NV Bar # 10352)
    520 South 4th St., Suite 360
3   Las Vegas, Nevada 89101
    Telephone: (858) 750-7600
4   Facsimile: (702) 685-6342
    E-mail: lhandley@aldridgepite.com
5
    Attorneys for Defendant:
6   WELLS FARGO HOME MORTGAGE

Electronically Filed
09/09/2015 04:35:24 PM

CLERK OF THE COURT

7

8                       DISTRICT COURT

9                   CLARK COUNTY, NEVADA

10
    ROBERT LAFAYETTE, AN INDIVIDUAL,        Case No. A-15-723401-C
11                                          Dept. V
            Plaintiff,
12                                          ORDER DISSOLVING TEMPORARY
        v.                                  RESTRAINING ORDER AND DENYING
13                                          MOTION FOR PRELIMINARY
    WELLS FARGO HOME MORTGAGE, A            INJUNCTION
14  CORPORATION, AND NATIONAL
    DEFAULT SERVICING CORPORATION, A        Date:  September 1, 2015
15  CORPORATION,                            Time: 9:00 a.m.

16          Defendants.

17

18          After  review and consideration of Plaintiff's Verified Application for Temporary

19  Restraining Order and Motion for Preliminary Injunction and Ex-Parte Order for an Order

20  shortening Time, the oral arguments of the parties appearing at the September 1, 2015 scheduled

21  hearing of this matter, and all pleadings and papers on file herein, the Court finds as follows:

22          THE COURT FINDS that none of the above-captioned Defendants were properly served

23  with Plaintiff's Verified Application for Temporary Restraining Order, the ensuing Temporary

24  Restraining Order or any notice of hearing.

25          THE COURT FURTHER FINDS that Plaintiff did not file a Complaint in this matter to

26  properly commence the action, and further there is no basis or underlying causes of action or

27  claims which the Court can determine if there is a likelihood of success on the merits.

28          THE COURT FURTHER FINDS that notwithstanding the procedural deficiencies,

1  Plaintiff has not presented sufficient evidence and/or has not presented sufficient legal grounds

2  or other good cause to justify or warrant any further temporary restraining order or preliminary

3  injunction of Defendants' pending foreclosure sale concerning the real property at 9578 Adobe

4  Arch Court, Las Vegas, Nevada 89148.

5       NOW WHEREFORE based upon the foregoing, IT IS HEREBY ORDERED that

6  Plaintiff's Verified Application for Temporary Restraining Order and Motion for Preliminary

7  Injunction is DENIED in its entirety.

8       IT IS FURTHER ORDERED that this Court's prior Temporary Restraining Order

9  entered on August 25, 2015, is hereby DISSOLVED.

10       IT IS FURTHER ORDERED that this Court will retain jurisdiction over further motion

11  practice concerning the release of the $500.00 bond posted by Plaintiff for any damages

12  sustained by Defendants as a result of August 25, 2015 Temporary Restraining Order , otherwise

13  the above-captioned matter shall be considered closed.

14       IT IS SO ORDERED.

15       DATED:__Sept 7, 2015__

16                                   DISTRICT COURT JUDGE

17  Respectfully submitted by:

18  ALDRIDGE PITE, LLP

19

20  JORY C. GARABEDIAN (NV Bar # 10352)
     Attorney for Defendant:

21  WELLS FARGO HOME MORTGAGE

22

23

24

25

26

27

28

Exhibit "9"

Inst #: 20150923-0002705
Fees: $18.00 N/C Fee: $0.00
RPTT: $1369.35 Ex: #
09/23/2015 03:02:05 PM
Receipt #: 2561164
Requestor:
SERVICELINK TITLE AGENCY IN
Recorded By: RYUD    Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY :

WHEN RECORDED MAIL TO :
Wells Fargo Bank N.A.
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020
FORWARD TAX STATEMENTS TO:
Wells Fargo Bank N.A.
4101 Wiseman Blvd
San Antonio, TX  78251
APN: 163-30-612-002

NDSC File No.   :      12-30356-WA-NV
Title Order No.  :      120023737-NV-GT1

# TRUSTEE'S DEED UPON SALE

Transfer Tax : **$1,369.35**
The Grantee herein **WAS** the Beneficiary
The amount of the unpaid debt was **$471,530.19**
The amount paid by the Grantee was **$268,345.00**
The property is in the city of **LAS VEGAS**, County of **CLARK**, State of  NV.

**National Default Servicing Corporation, an Arizona Corporation**, as the duly appointed Trustee (or successor Trustee or Substituted Trustee), under a Deed of Trust referred to below, and herein called "Trustee", does hereby grant without any covenant or warranty to :

Wells Fargo Bank N.A.

herein called Grantee, the following described real property situated in **CLARK** County :

**LOT 2 IN BLOCK 1 OF GRANDBROOKE V, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 100 OF PLATS, PAGE 78 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA**

This conveyance is made pursuant to the powers conferred upon Trustee by said Deed of Trust executed by **ROBERT LAFAYETTE, A MARRIED MAN** , as Trustor, recorded on **11/23/2004** as Instrument No. **20041123-0003700** (or Book, Page) and Re-Recorded on **12/29/2011** as Instrument No. **201112290001959** (or Book, Page) for the reason of **'RIDER'**  of the Official Records of **CLARK** County, NV.

All requirements of law regarding the recording and mailing of copies of the Notice of Default and Election to Sell, the recording, mailing, posting, and publication of the Notice of Trustee's Sale have been complied with.

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

Page 2
Trustee's Deed Upon Sale
NDSC File No.   :          12-30356-WA-NV

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **09/14/15** Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, which amount was **$268,345.00.**

Dated : 9/15/15          National Default Servicing Corporation, an Arizona Corporation

                              By: _____

                              **Genevieve Mada, Trustee Sales Officer**

State of: Arizona
County of: Maricopa

On _____ 9-15 ____, 20 _15_, before me, the undersigned, a Notary Public for said State, personally appeared  **Genevieve Mada,** personally known to me be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

Signature _____

**JUDY QUICK**
NOTARY PUBLIC – ARIZONA
MARICOPA COUNTY
My Commission Expires
April 20, 2017

STATE OF NEVADA
DECLARATION OF VALUE FORM

1    Assessor Parcel Number(s)
    a) 163-30-612-002
    b)_____
    c)_____
    d)_____

2    Type of Property:

| | | | | | | |
|---|---|---|---|---|---|---|
| a) | ☐ | Vacant Land | b) | ☒ | Single Fam. Res. | |
| c) | ☐ | Condo/Twnhse | d) | ☐ | 2-4 Plex | |
| e) | ☐ | Apt. Bldg | f) | ☐ | Comm'l/Ind'l | |
| g) | ☐ | Agricultural | h) | ☐ | Mobile Home | |
| | ☐ | Other _____ | | | | |

FOR RECORDER'S OPTIONAL USE ONLY
Book: _____ Page: _____
Date of Recording: _____
Notes: _____

3.   a Total Value/Sales Price of Property            $268,345.00
    b Deed in Lieu of Foreclosure Only (value of property)   (_____)
    c Transfer Tax Value:                         $268,345.00
    d Real Property Transfer Tax Due               $1,369.35

4.   **If Exemption Claimed**:
    a Transfer Tax Exemption per NRS 375.090, _____.
    b Explain Reason for Exemption: _____

5.   Partial Interest:  Percentage being transferred: _____ %
       The undersigned declare and acknowledges, under penalty of perjury, pursuant to NRS, 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein.  Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month.  Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _Genevieve Mada_ 9-15-15      Capacity  Trustee Sales Officer
      Genevieve Mada, 12-30356-WA-NV

Signature _____      Capacity  Grantee

**SELLER (GRANTOR) INFORMATION**                **BUYER (GRANTEE) INFORMATION**
National Default Servicing Corp.                Wells Fargo Bank N.A.
7720 N. 16th Street, Suite 300                  4101 Wiseman Blvd
Phoenix, AZ 85020                               San Antonio TX 78251

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**

Print Name: _Servialink Title Agency_      Escrow #: _____
Address: _3220 El Camino Real_
City: _Irvine_            State: _CA_      Zip: _92602_

**AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED**

# Exhibit "10"



Inst #: 20160107-0002969
Fees: $18.00
N/C Fee: $0.00
01/07/2016 03:22:04 PM
Receipt #: 2652664
Requestor:
ROBERT LAFAYETTE
Recorded By: GLORD   Pge: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

Recording requested by and
When recorded return to:
ROBERT LAFAYETTE
9578 ADOBE ARCH COURT
LAS VEGAS, NEVADA 89148

Assessor Number: #163-30-612-002
Instrument Number:
Loan Number:
9578 Adobe Arch Court, Las Vegas, Nevada 89148
_____
Space above this line for Recorder's use only

### NOTICE OF LIS PENDENS

TO ALL PERSONS be it known of the pending litigation IN THE BANKRUPTCY
COURT OF NEVADA IN AND FOR CLARK COUNTY with case # 14-10235-BTB IS
HEARBY AMENDED AND NOW IS IN PENDING LITIGATION IN THE UNITED
STATES DISTRICT COURT, DISTRICT OF NEVADA with case # 2:16-cv-00023-
RFB-NJK and is part of enforcement authorized under 15 U.S.C. 1692k for violations of
the Fair Debt Collections Practices Act (FDCPA) concerning the property described.

### NOTICE OF STAY AND ADVERSE CLAIM

LEGAL DESRIPTION:

Lot 2 in Block 1 of Grandbrooke V, as shown by map thereof on file in Book of Plats,
Page 78 in the Office of the County Recorder of Clark County, Nevada.

**THE ADDRESS ON SAID PROPERTY  9578 ADOBE ARCH COURT, LAS
VEGAS, NEVADA, 89148.**

**Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent**

**This is notice to all alleged, self-titled "Creditors, Trustees, Servicers" who are
actually defined as mere (third-party) debt collectors under 15 U.S.C. §§ 1692 et
seq. as amended the FDCPA.**

**This consumer's ongoing private right of action (PRA) is now being enforced in
United States District Court Case# 2:16-cv-00023.  Until this private right of action
matter is certified, moving forward is a further violation of applicable consumer
protection law(s) and due process of law.  Before this notice, you may claim
immunity because you were not aware of this consumer's PRA.  After this public**

notice, you were fully informed of this consumer's actions. This notice serves as a tacit agreement and further stipulates that no (third-party) debt collector had prior consent of this Consumer given directly to them to communicate or record any non-public information. Any additional ongoing violative conduct and behavior to the FDCPA will be handled accordingly.

You have been noticed. Govern yourself accordingly.


ROBERT LAFAYETTE


## JURAT

State of NEVADA          )
                         ) ss:
County of CLARK          )


Subscribed and sworn to (or affirmed) before me on this ___6___ day of

___January___, __2016__, by ___Robert Lafayette___, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notary                                              (seal)


My Commission expires: ___10/19/17___

NONA ABAD
Notary Public, State of Nevada
Appointment No. 02-73237-1
My Appt. Expires Dec 19, 2017

Exhibit "11"



Inst #: 20160202-0000794
Fees: $18.00
N/C Fee: $0.00
02/02/2016 11:31:58 AM
Receipt #: 2674059
Requestor:
ROBERT LAFAYETTE
Recorded By: GLORD   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Recording requested by and
When recorded return to:
ROBERT LAFAYETTE
9578 ADOBE ARCH COURT
LAS VEGAS, NEVADA 89148

Assessor Number: #163-30-612-002
Instrument Number:
Loan Number:
9578 Adobe Arch Court, Las Vegas, Nevada 89148

Space above this line for Recorder's use only

## NOTICE OF LIS PENDENS

TO ALL PERSONS be it known of the pending litigation IN THE UNITED STATES
DISTRICT COURT, DISTRICT OF NEVADA, with case # 2:16-cv-00023-RFB-NJK
and is part of enforcement authorized under 15 U.S.C. 1692k for violations of the Fair
Debt Collections Practices Act concerning the property described. The first Lis Pendens
was filed in the Clark County Recorder's office, on 09/01/2015, instrument # 20150901-
0001527

## NOTICE OF STAY AND ADVERSE CLAIM

LEGAL DESRIPTION:

Lot 2 in Block 1 of Grandbrooke V, as shown by map thereof on file in Book of Plats,
Page 78 in the Office of the County Recorder of Clark County, Nevada.

**THE ADDRESS ON SAID PROPERTY 9578 ADOBE ARCH COURT, LAS
VEGAS, NEVADA, 89148.**

**Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent**

**This is notice to all alleged, self-titled "Creditors, Trustees, Servicers" who are
actually defined as mere (third-party) debt collectors under 15 U.S.C. §§ 1692 et
seq. as amended the FDCPA.
This consumer's ongoing private right of action (PRA) is now being enforced in
United States District Court Case# 2:16-cv-00023. Until this private right of action
matter is certified, moving forward is a further violation of applicable consumer
protection law(s) and due process of law. Before this notice, you may claim
immunity because you were not aware of this consumer's PRA. After this public**

notice, you were fully informed of this consumer's actions. This notice serves as a tacit agreement and further stipulates that no (third-party) debt collector had prior consent of this Consumer given directly to them to communicate or record any non-public information. Any additional ongoing violative conduct and behavior to the FDCPA will be handled accordingly.

You have been noticed. Govern yourself accordingly.

ROBERT LAFAYETTE

## JURAT

State of NEVADA            )
                                      ) ss:
County of CLARK         )

Subscribed and sworn to (or affirmed) before me on this ____6____ day of _____January_____, 2016, by ___Robert Lafayette___, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notary                                                                      (seal)

My Commission expires: ___1/19/17___

NONA ABAD
Notary Public, State of Nevada
Appointment No. 02-73237-1
My Appt. Expires Dec 19, 2017